UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 5:18-CR-5065-REW |
| v. | ) | |
| ABIGAIL SARGENT, et al., | ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

\*\* \*\* \*\* \*\* \*\*

The Court conducted a hearing designed to avoid any latent Sixth Amendment problem relative to status of representation. At the time it set the hearing, retained lawyers for each of the three Co-Defendants practiced from a common building and in some sense office-shared. Because attorneys in the same space could be a firm, or could be treated as such, the Court perceived the need for analysis under Federal Rule 44(c). That Rule requires court scrutiny of joint representation, which occurs, as pertinent, "when . . . defendants are represented by the same counsel, or counsel who are associated in law practice." Rule 44(c)(1)(B).

Rule 44 governs, but so do undergirding Kentucky ethics principles (Ky. Sup. Ct. R. 3.130(1.0), (1.7)–(1.10)) and federal common law. *United States v. Stiger*, 251 F. App'x 508, 511 (10th Cir. 2007) (referencing, in disqualification context, "local rules of the court" and "standards developed under federal law") (citation omitted). Of course, the overarching concern is the Sixth Amendment and the right of every defendant to independent, conflict free counsel. *See Wood v. Georgia*, 101 S. Ct. 1097, 1103 (1981)

1

(right to conflict-free counsel is "correlative right"). To assure full and fair review, the Court explained the concerns to all, appointed consultative counsel for each Defendant (under the CJA), and set the hearing. In the interim, Hon. Brent Caldwell moved to withdraw, and Hon. Dan Carman entered his appearance. Mr. Carman is not in the same building with the rest.[1]

The hearing occurred. Each CJA lawyer did meet and confer with the respective Defendant. The United States suggested a waiver analysis and stated that each lawyer would be "disqualified" without a waiver. The Court finds that position flawed. First, the Court must determine whether there is a joint representation (and thus potential conflict) issue. A disqualifying basis would exist only if the Court found a predicate conflict, so talking about waiver first inverts the proper order.

Each lawyer involved proffered, to include Brent Caldwell. Each is an officer of the Court, and the Court relies on the statements made as accurate. *United States v. Kindle*, 925 F.2d 272, 275 (8th Cir. 1991) ("The trial court may give substantial weight to the representations of counsel regarding conflicts of interest.").

The Court took the lawyers through the factorial analysis set forth in Kentucky ethics opinion KBA E-244, which captures the fact-specific nature of the issue.[2] As to

---

[1] That eliminates one issue (the current Caldwell-Caldwell relationship) but not the need for analysis. If Brent Caldwell had been part of a firm involving Noel Caldwell and/or Jerry Wright, his withdrawal here would require a difficult former client and imputed disqualification assessment as to the remaining lawyers and Brent Caldwell's former client.

[2] The advisory opinion is helpful. The Kentucky Bar Association provided the following list of arrangements appropriate "for a lawyer to be free of conflicts of interest with other members of the same office space":
    1. Each lawyer must have separate private offices,
    2. Each lawyer must have separate secretarial staff,

each lawyer and each category, the lawyers uniformly depicted an office sharing relationship that does not resemble or function as a law firm. Other than the common building and some common areas, the attorneys are separate. They are distinct financially and structurally. The lawyers have discrete systems, computers, insurance coverage, tax compliance, and private offices. The lawyers maintain exclusive control and access over all files, electronic and paper. There is no sharing of core secretarial staff, storage, or other personnel. Each practitioner has his own letterhead and phone number. The building does not display the lawyer names in a way that indicates or promotes them as within a law firm.

Again, the Court has consulted both Kentucky and federal law on the proper factors. *See* Ky. Sup. Ct. R. 1.130(1.0),[3] (1.7)–(1.10); *Duncan v. Morton*, 256 F.3d 189,

---

3. A common phone number may be used but it must be Answered in the form of the number and not by stating the names of the lawyers (DR 2-102(C)),
4. Each lawyer must maintain separate filing systems and complete non-access by any other lawyer or secretaries in the office sharing arrangement,
5. Separate checking and banking accounts must be maintained
6. Separate taxation, workers' compensation, insurance, and other matters must be maintained,
7. There may be no splitting of fees between the lawyers in the firm other than on an hourly basis where one lawyer "covers" for the other lawyer. Obviously, in this case the lawyer who covers for that other lawyer must have received the consent of the client to do so and the covering lawyer is deemed to have had that particular person as a client as far as future conflicts of interest are concerned,
8. Each lawyer must have separate stationery, and
9. The names of the lawyers at the front of the building are separated by lines which clearly show a non-partnership agreement.

KBA Ethics Op. E-244 (1981). The hearing showed material compliance with these requirements.

[3] In the Commonwealth:

> Whether two or more lawyers constitute a firm . . . can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded

198 (3d Cir. 2001) ("In fact, we have found lawyers with similarly entwined, but not officially combined, practices not to be 'associated' within the meaning of Federal Rule of Criminal Procedure 44(c)." (internal citation omitted)); *United States v. Pungitore*, 910 F.2d 1084, 1140 (3d Cir. 1990) ("Given that Simone and Capone had separate stationery available and had different clients, and that Capone paid his own taxes and had his own secretary, the court's legal conclusion that Simone and Capone had independent practices was justified . . . as the attorneys' sharing of office space and their participation in joint trials did not lead inexorably to the conclusion that they were associates."); *United States v. Hardin*, No. CIV. 11-10738, 2011 WL 2118941, at *5 (E.D. Mich. May 27, 2011) (Generally, in the absence of evidence of an actual conflict, "the sharing of office space alone is not sufficient to create a conflict of interest."); *Rivas v. United States*, No. 96 CV 2954 (SJ), 1997 WL 391464, at *3 (E.D.N.Y. July 8, 1997) ("Shared space and resources is relatively common among solo practitioners, and it is in no way indicative of partner or associate status. . . . Attorneys Wiggins and Watts presented themselves not as members of any firm, but as sole practitioners with no other partners. Wiggins' letterhead indicates his status as a sole practitioner, as does his listing in West's Legal Directory." (internal

---

as constituting a firm. However, if they present themselves to the public in a way that suggests that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the Rule that is involved. A group of lawyers could be regarded as a firm for purposes of the Rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the Rule that information acquired by one lawyer is attributed to another.

Ky. Sup. Ct. R. 3.131(1.0), cmt. 2

citations omitted)). Ultimately, KBA E-418, though again only advisory, fairly captures the thinking:

> [W]here an office-sharing arrangement rigorously shields each lawyer from confidential information of the other lawyers' clients, recognizes each lawyer's individual loyalty to his or her clients, protects each lawyer's exercise of independent professional judgment, and avoids improper communications about each lawyer's identity and services, the arrangement will not be treated as a firm. Accordingly, the rules . . . related to imputed disqualification . . . would not apply[.]

KBA Ethics Op. E-418 (2001).

The Court finds that the lawyers here are and have been distinct and merit treatment as separate and independent practitioners. In fact, other than the common building, there really are no factors to suggest treatment as a firm. The physical space, as explained on the record, further supports that the lawyers have separate practices.

As such, the Court sees no issue of joint representation. Despite that, the Court ensured that each Defendant understood the testimony and had the chance, again, to confer with independent counsel. Each Defendant affirmatively stated the desire to continue with the current representation, this despite the Court's explicit offer to provide CJA counsel for the full case defense.[4]

---

[4] Two Defendants (Sargent, DE 21, and Hernandez, DE 23) tendered "waivers." The Court has read them but did not elect to process this as a waiver case. Thus, the Court did not conduct a full *Curcio* hearing. Two thoughts drove this. First, the Court finds no conflict (or threat of conflict) and, as such, there is no conflict to waive. Second, if, in fact, the lawyers were effectively in a firm, there would be a very low possibility of the Court accepting a waiver whereby lawyers in the same firm would represent adverse Co-Defendants in a Class A drug conspiracy. The Court has avoided that in the past. *See, e.g., United States v. Mahone*, Case No. 17-CR-52-KKC-REW, ECF No. 35 (May 5, 2017); *see also United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996) ("Because of the lawyer's continuing duty of confidentiality, the representation, be it simultaneous or successive, of more than one defendant charged in the same criminal conspiracy inevitably presents a conundrum for the lawyer who is so engaged."). The Complaint alone shows the adversity already present, and the Court simply elects against going

The Court accepts the status quo as compliant with applicable law. At the hearing, the Court did announce some prophylactic measures, which all counsel shall follow during the pendency of the case. *See* DE 21, 22, & 23.

\* \* \* \* \*

The Court issues this Opinion and Order resolving a non-dispositive pretrial matter under 28 U.S.C. § 636(b)(1)(A). Any party objecting to this Order should consult the statute and Federal Rule of Criminal Procedure 59(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.

This the 13th day of April, 2018.

Signed By:
*Robert E. Wier* /s/ REW
United States Magistrate Judge

---

through an unnecessary waiver colloquy built on a hypothetical, non-existent, and likely unwaivable conflict.